UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        No. 1:17-CR-13

      Plaintiff,

v.

        Hon. Robert J. Jonker
        Chief United States District Judge

MATTHEW JOHN ANDALUZ,

      Defendant.

_____/

UNITED STATES' TRIAL BRIEF

ANDREW BYERLY BIRGE
Acting United States Attorney

SEAN M. LEWIS
Assistant United States Attorney

330 Ionia Avenue NW, Suite 501
P.O. Box 208
Grand Rapids, MI  49501-0208
(616) 456-2404

**TABLE OF CONTENTS**

I.      Summary of Pertinent Proceedings ................................................................ 3

II.     Factual Background ........................................................................................ 3

   A.   Sexual Abuse and Exploitation of Child1 ................................................ 4

   B.   Images of Child1 Have Been Found Around the Country ......................... 5

   C.   The National Center for Missing and Exploited Children ....................... 5

   D.   HSI Investigation .................................................................................... 6

   E.   The Defendant's Statements ................................................................... 7

   F.   Child1 Confirmed the Sexual Abuse and Exploitation ........................... 8

III.    Statutes and Elements ................................................................................... 9

   A.   Sexual Exploitation of a Child ................................................................ 9

      1.   The Statute ......................................................................................... 9

      2.   Elements ........................................................................................... 10

      3.   Frequently Recurring Issues ............................................................ 11

   B.   Possession of Child Pornography ......................................................... 13

      1.   The Statute ....................................................................................... 13

      2.   Elements ........................................................................................... 14

IV.     Potential Evidentiary Issues ....................................................................... 14

   A.   Country-of-Origin Markings ................................................................. 14

   B.   Defendant's Statements – Admissible Against Him .............................. 15

   C.   Defendant's Statements – Defendant May Not Offer His Prior Statements ................................. 16

   D.   Federal Rule of Evidence 702 Witnesses .............................................. 17

   E.   Images and Video - Authentication ....................................................... 18

   F.   Pedagogical-Device Summaries or Illustrations .................................... 18

   G.   Prior Consistent Statements As Substantive Evidence ......................... 19

   H.   Res Gestae, Rule 414, and/or Rule 404(b)(2) Evidence ....................... 19

      1.   Controlling Law ............................................................................... 20

      2.   Analysis ............................................................................................ 23

   I.   Stipulations .......................................................................................... 25

V.      Other Matters .............................................................................................. 25

   A.   Age Appropriate Oath ........................................................................... 25

   B.   The Crime Victims' Rights Act ............................................................ 26

   C.   Forfeiture Allegation ............................................................................. 27

## I.  **Summary of Pertinent Proceedings**

On December 16, 2016, the Honorable Ray S. Kent signed a Criminal Complaint charging the defendant with Sexual Exploitation of Children.  (16-MJ-331, R.1: Compl., PageID.1.)  Homeland Security Investigations ("HSI") had arrested the defendant on probable cause earlier the same day after executing a search warrant at the defendant's home in Battle Creek, Michigan.  The defendant made his initial appearance the same day and was detained pending trial.  (16-MJ-331, R.4: Mins., PageID.13; R.10: Order of Detention, PageID.21.)

On January 12, 2017, the grand jury returned a two-count Indictment charging the defendant with Sexual Exploitation of a Child (Count 1) and Possession of Child Pornography (Count 2).  (R.1: Ind., PageID.1-3.)  The indictment also contains a forfeiture allegation.  (*Id.* at PageID.4-5.)  The defendant was arraigned and pled "not guilty" on January 24, 2017.  (R.18: Mins., PageID.48.)

The United States extended a plea offer to the defendant, and extended the deadline for acceptance of the offer a number of times, but the defendant rejected the plea offer.

Trial in this matter is scheduled to begin on June 13, 2017, and the final pretrial conference is scheduled for May 31, 2017.  (R.24: Order, PageID.61.)

## II.  **Factual Background**

This section of the Trial Brief provides a brief historical overview of the case.  Its purpose is not to provide a complete recitation of the facts or the evidence that will be presented at trial; instead, it is offered only to familiarize the Court with the case.

## A.  Sexual Abuse and Exploitation of Child1

In or about 2009, the defendant and E.E. met online.[1]  In late 2009, the defendant moved from New York to live with E.E. in the Battle Creek area.  E.E. was then living with her two children, Child1 and Child2.  Child1 was a minor female of approximately 9 years of age, and Child2 was her younger brother.

In June 2010, the defendant purchased a Nikon D3000 camera from a Best Buy store in Battle Creek, Michigan.  He paid $499.99 plus tax.  The camera was made in Thailand.

In late 2010 and early 2011, the defendant used this Nikon camera to take a series of pornographic images of Child1, who was approximately 10 years old at the time.  He distributed these images to others via the Internet.  These images have come to be known as the "Cord Over Brown" series of child pornography.

The defendant not only created images of Child1 engaged in sexually explicit conduct, he also sexually abused her on numerous occasions from the time she was approximately 10 years old until she was approximately 13 years old.  The details of this sexual abuse (i.e., the specific ways in which the defendant sexually abused the child) have been disclosed in writing to the defense.  We refrain from recounting them here out of respect for the victim's privacy.

As is common in cases such as this one, the defendant groomed Child1 for abuse and exploitation by showing her pornography and providing her with sex toys.  He also warned her not to tell.

---

[1]  E.E. was an adult female.  Her identity is known to the parties.  We have used her initials, rather than her name, to protect the identity of the victim, Child1.

**B.  Images of Child1 Have Been Found Around the Country**

State and federal investigators have found electronic images of Child1 in approximately 12 child-pornography investigations around the country, including cases in Vermont, Washington state, and New York.  As per standard protocol, these investigators submitted electronic copies of these images to the National Center For Missing and Exploited Children ("NCMEC") for the purpose of checking them against NCMEC's Child Recognition and Identification System.

**C.  The National Center for Missing and Exploited Children**

NCMEC was created in 1984 as a private, non-profit organization.  It was designated by Congress to serve as the national clearinghouse on issues relating to missing and exploited children.  NCMEC serves as the central U.S. repository for information related to child victims depicted in child pornography.  One of its missions is to "assist in the identification of child victims depicted in [child pornography] images."  The organization reviews images of child pornography submitted by law enforcement to determine (1) whether those images have been seen before in other investigations and (2) whether the child victims have been identified.  When a child victim in a particular series has not yet been identified, NCMEC can provide law enforcement with information about the images that may aid in identifying the victim.

Matthew Stein is an analyst at NCMEC.  He was analyzing images from the "Cord Over Brown" series of child pornography because, at the time, the victim was unidentified.  He was able to extract EXIF data from a number of the images that showed that the images had been created in late 2010 and early 2011 using a Nikon D3000 camera bearing serial number 3437590.  Stein then conducted research using open sources on the Internet to look for other images created with the same camera.  His research led him to the account of "AbasyxxStock" on the website

DeviantArt.com.  Stein discovered that a photograph posted on AbasyxxStock's page had been taken with the same Nikon D3000 camera used to create the "Cord Over Brown" series.  Stein continued searching and found a Facebook page for "AbassyxArtwork," which was linked to the DeviantArt user AbasyxxStock.  This Facebook page revealed the defendant's identity.  Stein continued his open-source research and learned that the defendant was in the Western District of Michigan; the defendant was connected with E.E.; and E.E. had a daughter who appeared to be the victim depicted in the images from the "Cord Over Brown" series.

On or about November 7, 2016, NCMEC sent a lead containing a summary of Stein's research to Homeland Security Investigations (HSI).  Stein also provided HSI with electronic copies of the images from the "Cord Over Brown" series as part of the lead.

### D.  HSI Investigation

Upon receiving the lead from NCMEC, HSI assigned the case to Special Agent Mike George.  SA George and his colleagues reviewed Stein's research and replicated much of it themselves.  SA George also conducted research and discovered that during the time the "Cord Over Brown" child pornographic images were manufactured, the defendant and E.E. lived at [address redacted], Springfield, Michigan, which is in Calhoun County.  SA George located the landlord of the premises, who confirmed that during the relevant time period, the defendant and E.E. lived at that location.  SA George also visited the property and recognized the background (e.g., wall paneling and unique tile flooring) as the same background shown in a number of the images of child pornography.

HSI issued an administrative subpoena to Nikon to determine the owner of the D3000 camera with serial number of 3437590.  On November 23, 2016, Nikon responded that it had no

information as to the end user of the camera; however, the company reported that it had sold the camera to Best Buy on June 2, 2010.

SA George then contacted Best Buy regarding locating the receipt for the purchase of the Nikon D3000 camera.  SA George provided the camera model number (D3000), serial number, and the name of Matthew ANDALUZ as the possible purchaser/owner of the camera.

A Best Buy manager contacted SA George and advised that he had located the receipt for the purchase of the camera.  The manager stated that he located the receipt by searching for the name Matthew Andaluz in Best Buy's business records.  Best Buy provided a copy of the receipt from its records, showing that the defendant had purchased a Nikon D3000 camera on June 16, 2010 in Battle Creek, Michigan.  The receipt shows that the defendant paid $499.99 (plus tax) for the Nikon D3000 camera.

On December 16, 2016, SA George and his colleagues executed a federal search warrant (16-MJ-326) at the defendant's residence in Battle Creek, Michigan.  Agents found in the basement of the residence the Nikon D3000 camera used to create the child pornography discussed above.  Agents also found a number of the sex toys that appear in the child pornography series.  Agents further found items containing child pornography in the defendant's room.  These items include a Sandisk thumb drive, a Western Digital hard drive, and a Toshiba hard drive.  All of these items were made outside the State of Michigan.

### E.  The Defendant's Statements

Agents interviewed the defendant while the search warrant was being executed.  Agents advised the defendant that he was not under arrest and he was free to leave.  The defendant agreed to speak with agents.  SA George told the defendant that agents already knew many of the specifics related to the production of child pornography, such as the specific camera the

defendant used when he took pornographic pictures, the home where the pictures were taken, and the date those pictures were taken.  The defendant shook his head affirmatively acknowledging SA George's statements.  SA George told the defendant that he was going to show him some of the pictures in an effort to refresh his memory.  After seeing some of the pictures, the defendant indicated that the timeframe of the pictures would have been around the time he moved to Battle Creek, Michigan from New York.  The defendant stated that he moved to Battle Creek in November 2009 and that the home in the pictures was the home he initially moved to with E.E. when he relocated to Battle Creek.

SA George again told the defendant that agents knew he was the one who took the pictures, but that one thing they did not know was if the defendant simply took the pictures or, in addition to taking the pornographic pictures, he had engaged in the sexual assault and intercourse with the victim.  The defendant denied having intercourse with the victim but did not deny any of the other conduct.  Shortly after making the denial, the defendant indicated he felt it was probably in his best interest if he not speak with agents any longer and wanted an attorney.  The interview was terminated.

### F.  Child1 Confirmed the Sexual Abuse and Exploitation

Child1 was present at the defendant's home when the search warrant was executed.  She was taken to the Battle Creek Child Assessment Center where she was interviewed by Forensic Interview Specialist Amy Allen.  Child1 confirmed that the defendant had sexually abused and exploited her.

### III.    Statutes and Elements

#### A.  Sexual Exploitation of a Child

Count 1 of the Indictment charges the defendant with Sexual Exploitation of a Child, in violation of 18 U.S.C. § 2251(a) and (e). The defendant violated Section 2251 when he knowingly employed, used, persuaded, induced, enticed, or coerced Child1, a minor of approximately 10 years of age, to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct.

#### 1. The Statute

Title 18, United States Code, Section 2251(a) provides, in pertinent part:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . shall be punished as provided under subsection (e), . . . if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

Subsection (e) provides, in pertinent part, that "[a]ny individual who violates, or attempts or conspires to violate, this section shall be fined under this title and imprisoned not less than 15 years nor more than 30 years . . . ." 18 U.S.C. § 2251(e).

Title 18, United States Code, Section 2256 defines many of terms in the foregoing statute. It defines a "minor" as "any person under the age of eighteen years." *Id*. at § 2256(1). It defines "producing" as "producing, directing, manufacturing, issuing, publishing, or advertising." *Id*. at § 2256(3). It also defines "visual depiction" to include "undeveloped film and videotape, [and] data stored on computer disk or by electronic means which is capable of conversion into a visual image." *Id*. at § 2256(5).

Section 2256 also defines "sexually explicit conduct" to include actual or simulated sexual intercourse (including genital-genital, oral-genital, and anal-genital), masturbation, sadistic abuse, and "lascivious exhibition of the genitals or pubic area of any person."  18 U.S.C. § 2256(2)(A)(v).  The statue does not define the phrase "lascivious exhibition of the genitals or pubic area of any person" further, but courts have defined that term.  In *United States v. Brown*, 579 F.3d 672, 680 (6th Cir. 2009), the Sixth Circuit applied the six-factor test for determining whether an image or video is "lascivious," as set forth in *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986).  Those factors, and the law concerning those factors, have been incorporated into the Pattern Jury Instructions as follows:

> In deciding whether an exhibition is lascivious, you may consider these six factors:  (1) whether the focal point of the visual depiction is on the child's genitalia or pubic area; (2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity; (3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;  (4) whether the child is fully or partially clothed, or nude; (5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and (6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*Sixth Circuit Criminal Pattern Jury Instructions* § 16.01 (Aug. 1, 2016).

## 2.  Elements

The elements of Sexual Exploitation of a Child are as follows:

 (A)  First: That the defendant employed, used, persuaded, induced, enticed, or coerced a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct.

 (B)  Second:

   (i)      That the visual depiction was produced or transmitted using materials that were mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including computer.

 OR

> (ii)   That the visual depiction was transported or transmitted (i) using any means or facility of interstate or foreign commerce, or (ii) in or affecting interstate or foreign commerce.[2]

*Sixth Circuit Model Criminal Jury Instructions*, § 16.01 (Aug. 1, 2016).

### 3.  Frequently Recurring Issues

Using a Minor:  Defendants sometimes claim that the "use" element of § 2251, requires "proof of active or coercive conduct by a defendant upon a minor."  *See, e.g., United States v. Wright*, 774 F.3d 1085, 1089 (6th Cir. 2014).  The Sixth Circuit has rejected that claim and held that "the 'use' element is satisfied if a minor is photographed in order to create pornography." *Id*.; *see also United States v. Finley*, 726 F.3d 483, 495 (3d Cir. 2013) (active involvement on the part of a minor is not essential for a conviction under § 2251(a); a perpetrator can "use" a minor to engage in sexually explicit conduct without the minor's conscious or active participation).

Produced Using:   Section 2256(3) defines "producing" as "producing, directing, manufacturing, issuing, publishing, or advertising." 18 U.S.C. § 2256(3).  This term "is defined broadly and non-technically."  *United States v. Wright*, 774 F.3d 1085, 1091 (6th Cir. 2014).

Who Took The Picture:  Defendants also sometimes claim that they cannot be convicted unless the government shows that they took some or all of the pictures or videos.  The Sixth Circuit has squarely rejected that claim.  *See United States v. Daniels*, 653 F.3d 399, 408 (6th Cir. 2011) (rejecting this claim and affirming where another person took the picture); *see also United States v. Wright*, 774 F.3d 1085, 1092 (6th Cir. 2014) (it is enough that circumstantial

---

[2]   The government can also prove the interstate-commerce element in a number of other ways (e.g., by showing that the defendant knew or had reason to know the images would be transported or transmitted in interstate or foreign commerce or using a means and facility of interstate or foreign commerce), but these alternative methods of proof are not presently relevant.

evidence shows that the defendant "actively participated in the creation of the photographs" even if he did not personally take them).

Knowledge Regarding Interstate or Foreign Commerce:  Defendants sometimes claim that they cannot be convicted unless the government shows that they knew the materials used to produce the images had traveled in interstate commerce.  Such claims lack merit.  *See, e.g., United States v. Sheldon*, 755 F.3d 1047, 1049 (9th Cir. 2014) ("§ 2251(a) does not require knowledge of the interstate nature of the materials used to produce sexually explicit images); *United States v. Terrell*, 700 F.3d 755, 761 (5th Cir. 2012) ("'knows or has reason to know' does not apply to the final two clauses" that provide the jurisdictional nexus for § 2251(a)); *United States v. Darby*, 37 F.3d 1059, 1067 (4th Cir. 1994) (noting that "[n]umerous cases have held that criminal statutes based on the government's interest in regulating interstate commerce do not generally require that an offender have knowledge of the interstate nexus of his actions").

Knowledge of Age:  Defendants also sometimes claim that they did not know, or the government did not show they knew, that the victim was a minor.  Such claims are impermissible and irrelevant because the government needs to show only that the victim was a minor at the time, not that the defendant was aware of the fact.  *See United States v. Humphrey*, 608 F.3d 955, 962 (6th Cir. 2010) ("[K]nowledge of the victim's age is neither an element of the offense nor textually available as an affirmative defense.").  In this case, however, there will be ample evidence that the defendant was aware the victim was a minor.

### B.  Possession of Child Pornography

Count 2 charges the defendant with possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2).

### 1.  The Statute

Title 18, United States Code, Section 2252A(a)(5)(B) provides for punishment for any person who "knowingly possesses . . . any . . . film, videotape, computer disk, or any other material that contains an image of child pornography . . . that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer."  18 U.S.C. § 2252A(a)(5)(B).   The statute provides for enhanced penalties "if any image of child pornography involved in the offense involved a prepubescent minor or a minor who had not attained 12 years of age."   18 U.S.C. § 2252A(a)(b)(2).

Section 2256 defines many of the terms used in Section 2252A.  *See* 18 U.S.C. § 2256. Specifically, it defines "child pornography" as "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where . . . the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct."  *Id*. at § 2256(8)(A).  Additional pertinent terms were discussed in the Section III.A.1, above.

### 2. Elements

The elements of Possession of Child Pornography are as follows:

(A) First: That the defendant knowingly possessed any film, videotape, computer disk, or other material that contained an image of child pornography.

(B) Second: That the defendant knew that the material was or contained child pornography.

(C) Third: The image of child pornography was produced using materials that had been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer. [3]

Sixth Circuit Model Criminal Jury Instructions, § 16.08 (Aug. 1, 2016).

### IV.  Potential Evidentiary Issues

The United States has outlined and briefed a number of evidentiary issues that may arise during the trial of this matter.  For ease of reference, we have listed the issues in alphabetical order.

### A.  Country-of-Origin Markings

The government intends to introduce into evidence the defendant's camera, computers, hard drives, and memory cards.  These items bear country-of-origin markings showing they were manufactured outside the state of Michigan.  This evidence will be offered to prove the interstate commerce elements of 18 U.S.C. §§ 2251(a) and 2252A.

Country-of-origin markings are admissible to show that a product or material was mailed, shipped, or transported in or affecting interstate or foreign commerce.  In *United States v. Fox*, 357 F. App'x 64, 65 (9th Cir. 2009), the defendant challenged his § 2251(a) conviction on the ground that the government failed to present sufficient evidence that the cameras Fox used to

---

[3] The government can also prove the interstate-commerce element in a number of other ways, but these alternative methods of proof are not presently relevant.

produce child pornography had traveled in interstate or foreign commerce.  Introducing the cameras' country-of-origin labels, which indicated they had been manufactured overseas, sufficed to prove the cameras had moved in foreign commerce.  *Id*. at 66 (citing *United States v. Patterson*, 820 F.2d 1524, 1526 (9th Cir. 1987) (imprint in firearm sufficient to prove interstate-commerce element)); *see also United States v. Alvarez*, 972 F.2d 1000, 1004 (9th Cir. 1991) (inscription "Garnika, Spain" on firearm was self-authenticating and because firearm was seized in California, evidence was sufficient to establish that firearm had moved in foreign commerce). The Federal Rules of Evidence do not require extrinsic evidence of authenticity for inscriptions, signs, tags or labels which indicate workmanship, control or origin.  Fed. R. Evid. 902(7).

## B.  Defendant's Statements – Admissible Against Him

The defendant made a number of statements in this case.  Those statements are admissible against the defendant under Federal Rule of Evidence 801(d)(2)(A) as admissions by a party-opponent.  Fed. R. Evid. 801(d)(2)(A).  The First Amendment does not prohibit the government from using a defendant's statements against him.  *See Wisconsin v. Mitchell*, 508 U.S. 476, 484 (1993) (the First Amendment "does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent").

In addition, the defendant nodded in agreement as SA George outlined the defendant's criminal activity in producing child pornography.  The defendant denied only having intercourse with the victim.  A statement of another is admissible against a party if it "is one the party manifested that it adopted or believed to be true."  Fed. R. Evid. 801(d)(2)(B).  A party may manifest an adoption of a statement through language, conduct, or silence.  *United States v. Jinadu*, 98 F.3d 239, 244 (6th Cir.1996).  To determine whether silence indicates adoption of a statement, "the primary inquiry is whether the statement was such that, under the circumstances,

an innocent defendant would normally be induced to respond, and whether there are sufficient foundational facts from which the jury could infer that the defendant heard, understood, and acquiesced in the statement."  *Id*.  Moreover, use of a defendant's pre-custodial, pre-*Miranda* silence as evidence of his guilt is permissible where a defendant has not expressly invoked his Fifth Amendment privilege.  *Salinas v. Texas*, 133 S. Ct. 2174, 2180 (2013).

### C.  Defendant's Statements – Defendant May Not Offer His Prior Statements

The government anticipates that the defendant may attempt to offer a number of his prior statements into evidence to prove the truth of the matter asserted therein.  Such statements are hearsay.  Fed. R. E. 801(c).  The exception under 801(d)(2) does not apply to a defendant who attempts to offer his own prior statements.  *United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005) ("Rule 801(d)(2), however, does not extend to a party's attempt to introduce his or her *own* statements through the testimony of other witnesses.  Indeed, if such statements were deemed admissible under Rule 801(d)(2), parties could effectuate an end-run around the adversarial process by, in effect, testifying without swearing an oath, facing cross-examination, or being subjected to first-hand scrutiny by the jury.") (emphasis in original) (internal citations and footnote omitted).

Defendants often seek to avoid this result by invoking Federal Rule of Evidence 106, which codifies the Rule of Completeness.  This Rule states: "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part — or any other writing or recorded statement — that in fairness ought to be considered at the same time."  Fed. R. Evid. 106.  Courts employ this Rule when the proffered evidence is necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion.

Absent that, the Rule does not permit a defendant to admit into evidence statements that are exculpatory and therefore hearsay simply because they are part of a statement that is otherwise inculpatory.  *See, e.g., United States v. Ford*, 761 F.3d 641, 651-52 (6th Cir. 2014).

The Sixth Circuit has explained that "the 'rule of completeness' allows a party to correct a misleading impression created by the introduction of part of a writing or conversation by introducing additional parts of it necessary to put the admitted portions in proper context." *United States v. Holden*, 557 F.3d 698, 705 (6th Cir. 2009).  However, the rule "is not designed to make something admissible that should be excluded." *United States v. Costner*, 684 F.2d 370, 373 (6th Cir. 1982). "Right or wrong, [the Sixth Circuit] has acknowledged that under *Costner*, '[e]xculpatory hearsay may not come in solely on the basis of completeness.'" *United States v. Adams*, 722 F.3d 788, 826 (6th Cir. 2013) (*quoting United States v. Shaver*, 89 F. App'x 529, 533 (6th Cir. 2004)).

### D.  Federal Rule of Evidence 702 Witnesses

A witness who is "qualified as an expert by knowledge, skill and experience" may present expert testimony if his or her specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue.  Fed. R. Evid. 702.  The party calling an expert witness need not, and indeed should not, formally "offer" the witness for the Court's acceptance as an expert.  *See United States v. Johnson*, 488 F.3d 690, 697-98 (6th Cir. 2007). The admission of expert testimony is a matter within the sound discretion of the trial court. *United States v. Bonds*, 12 F.3d 540, 555-557 (6th Cir. 1994); *United States v. Langan*, 263 F.3d 613, 622 (6th Cir. 2001).

The United States intends to call a number of computer-related witnesses to testify about the results of various forensic examinations.  The government noted this fact in its Initial Pretrial

Conference Summary Statement.  (R.12, IPTCSS: PageID.40)  Since that time, it has provided to the defense reports of these examinations, as well as summaries of the expected testimony of each witness.  These witnesses include:

- ■ Special Agent Timothy Kruithoff, Department of Homeland Security, Homeland Security Investigations ("HSI")

- ■ Special Agent Blair Babcock, ("HSI")

- ■ Intelligence Research Specialist Ralna Farina, HSI

- ■ Analyst Matthew Stein, NCMEC

Because many of the above witnesses will be testifying as both fact and expert witnesses, the United States is requesting a pattern jury instruction for witnesses who offer both lay and expert testimony.

### E.  Images and Video - Authentication

To authenticate an image or video of child pornography, the United States is not required to "produce a witness to the creation of the videos who could testify that the videos actually depicted children."  *United States v. Edington*, 526 F. App'x 584, 591 (6th Cir. 2013).  In *Edington*, the Sixth Circuit relied on its earlier holding in *United States v. Damrah*, 412 F.3d 618, 628 (6th Cir. 2005), which held that "[e]vidence of how the [video] tapes were made and handled prior to their seizure was not required for admission and that the district court did not abuse its discretion in ruling that the tapes were self-authenticating, and also to a degree corroborated by other evidence."  412 F.3d at 628 (internal quotation marks omitted).

### F.  Pedagogical-Device Summaries or Illustrations

"Pedagogical-device summaries or illustrations . . . are intended to summarize, clarify, or simplify testimonial or other evidence that has been admitted in the case, but which are not themselves admitted, instead being used only as an aid to the presentation and understanding of

the evidence." *United States v. Bray*, 139 F.3d 1104, 1112 (6th Cir. 1998).  Such aids "may reflect to some extent, through captions or other organizational devices or descriptions, the inferences and conclusions drawn from the underlying evidence by the summary's proponent." *Id*. at 1111.  "For these the jury should be instructed that the summaries are not evidence and were used only as an illustrative aid."  *Id*.

"Trial courts have discretionary authority to permit counsel to employ . . . pedagogical-device 'summaries' to clarify and simplify complex testimony or other information and evidence or to assist counsel in the presentation of argument to the . . . jury."  *United States v. Munar*, 419 F. App'x. 600, 608 (6th Cir. 2011) (citation omitted).

### G.  Prior Consistent Statements As Substantive Evidence

Effective December 1, 2014, Federal Rule of Evidence 801(d)(1)(B) was amended to include a second basis on which prior consistent statements can be admitted as substantive evidence: "to rehabilitate the declarant's credibility as a witness when attacked on another ground." Fed. R. Evid. 801(d)(1)(B)(ii). As the Advisory Committee Notes explain, "[t]he intent of the amendment is to extend substantive effect to consistent statements that rebut other attacks on a witness – such as the charges of inconsistency or faulty memory."

Should the defendant attack the credibility of the victim or witnesses in this case, the United States may seek to introduce as substantive evidence prior statements –including, but not limited to, recorded interviews with trained forensic child interviewers and grand jury testimony – to rehabilitate the witnesses' credibility.

### H.  Res Gestae, Rule 414, and/or Rule 404(b)(2) Evidence

The United States intends to introduce evidence of the defendant's grooming activity, sexual assaults on Child1, production of child pornography, his distribution of these images to

others, and his receipt and possession of child pornography.  As discussed more fully below, this evidence is admissible as res gestate evidence, pursuant to Federal Rule of Evidence 414, and/or pursuant to Federal Rule of Evidence 404(b)(2).

In its Initial Pretrial Conference Summary Statement, the United States provided notice to the defendant that "[i]f the case goes to trial, the government will introduce evidence of the defendants' other acts of grooming, sexual assaults, & sexual activity with children; production and attempted production of child pornography; receipt, distribution, and possession of child pornography in accordance with Rules 404(b), 413, and 414."   (R.12: IPTCSS, PageID.41.)  The United States has repeated this notice in its discovery materials and provided the defense with the underlying factual basis for this conduct.

### 1. Controlling Law

"The standard for relevancy is extremely liberal: evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence."  *United States v. Deuman*, 568 F. App'x 414, 420 (6th Cir. 2014) (citation omitted).

### a.  Res Gestae Evidence

The Sixth Circuit recently provided a succinct overview of res gestae or "intrinsic acts" evidence in *United States v. Edmond*, ___ F.3d __ (6th Cir. March 3, 2016).  "Intrinsic acts may be admitted when evidence 'provides background information, establishes a nexus between individuals, or completes the story of the charged offense.'"  *Edmond*, slip op'n at 13 (citation omitted).

A district court may admit uncharged background evidence as long as it is "inextricably intertwined" with the underlying offense.  . . .  Intrinsic acts "are part of a single criminal episode," meaning they "ha[ve] a causal, temporal or spatial connection with the charged offense." Courts may admit evidence via this route if it (1) "is a prelude to the charged offense"; (2) "is directly probative of the

charged offense"; (3) "arises from the same events as the charged offense"; (4) "forms an integral part of a witness's testimony"; or (5) "completes the story of the charged offense."

*Edmond*, slip op'n at 12 (citations omitted).

### b.  Federal Rule of Evidence 414 and 404(b)(2)

Rule 414 of the Federal Rules of Evidence provides that "[i]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation.  The evidence may be considered on any matter to which it is relevant."  Fed. R. Evid. 414(a).  The Rule defines a "child" as a person below the age of 14, and "child molestation" as "a crime under federal law or under state law . . . involving . . . any conduct prohibited by 18 U.S.C. chapter 110 [which includes violations of Sections 2251 and 2252A], contact between any part of the defendant's body — or an object — and a child's genitals or anus; contact between the defendant's genitals or anus and any part of a child's body; deriving sexual pleasure or gratification from inflicting . . . physical pain on a child; or an attempt or conspiracy to engage in conduct described [above]."  Fed. R. Evid. 414(d)(2).  Notice to the defense is required.  Fed. R. Evid. 414(b).

"Rule 414(a) reflects congressional recognition that prior acts of sexual misconduct involving children . . . are probative to show an offender's propensity for committing a similar charged offense."  *United States v. Trepanier*, 576 F. App'x 531, 534 (6th Cir. 2014).  "Rule 414 itself was a 'strong legislative judgment that evidence of prior sexual offenses' have probative value and 'should ordinarily be admissible.'"  *United States v. Deuman*, 568 F. App'x 414, 420 (6th Cir. 2014) (citation omitted).  The Rule "create[s] an exception to the general ban on propensity evidence contained in Rule 404(b)."  *United States v. Seymour*, 468 F.3d 378, 385 (6th Cir. 2006).

21

Rule 404(b)(2) of the Federal Rules of Evidence provides that evidence of a crime, wrong, or act may be admissible for purposes other than showing conformity with character, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid.404(b)(2). Notice to the defense is required. *Id.*

The Sixth Circuit has considered the admissibility of prior acts of sexual misconduct pursuant to Rules 414, 413, and 404(b) in a number of cases. The general rule that emerges from these opinions is that such evidence is generally admissible if it is of the same type or seriousness as the charged conduct, but if the uncharged conduct is far more serious than the charged conduct, courts tend to exclude it. For example, *United States v. Deuman*, 568 F. App'x 414, 420 (6th Cir. 2014); *United States v. Sanchez*, 440 F. App'x. 436, 438-440 (6th Cir. 2011), and *United States v. Seymour*, 468 F.3d 378, 383-86 (6th Cir. 2006), involved charges of sexual assault or production of sexually graphic images of children, and the Rule 404(b)/414/413 evidence was of conduct that was generally as egregious and/or remarkably similar. In those cases, the Sixth Circuit affirmed the district court's discretionary decision to admit the evidence. Similarly, *United States v. Trepanier*, 576 F. App'x 531, 534 (6th Cir. 2014), involved charges of receipt and possession of child pornography, and the Rule 414 evidence was of conduct related to past possession of child pornography. The panel upheld admission of the Rule 414 evidence. But in *United States v. Stout*, 509 F.3d 796 (6th Cir. 2007), the Sixth Circuit affirmed the district court's decision to exclude evidence of the defendant's prior convictions of production and first degree sexual assault of a child, where the defendant was charged only with receiving and possessing child pornography. In so ruling the Court expressed its concern that the "reverberating clang of those accusatory words would drown out all weaker sounds [and] the risk of confusion is so great as to upset the balance of advantage." *Stout*, 509 F.3d at 801 (quoting,

*Shepard v. United States*, 290 U.S. 96, 104 (1933)); *see also United States v. Hough*, 385 F. App'x 535, 535 (6th Cir. 2010) (similar facts and similar ruling).

In addition, the Sixth Circuit has also held that where specific intent is at issue, Rule 404(b) is satisfied:

> [W]here there is thrust upon the government, either by virtue of the defense raised by the defendant or by virtue of the elements of the crime charged, the affirmative duty to prove that the underlying prohibited act was done with a specific criminal intent, other acts evidence may be introduced under Rule 404(b).

*United States v. Johnson*, 27 F.3d 1186, 1192 (6th Cir. 1994).  In particular, the courts find that a defendant's prior acts are probative of intent "when the prior [acts] were part of the same scheme or involved a similar modus operandi as the present offense."  *United States v. Bell*, 516 F.3d 432, 443 (6th Cir. 2008).

Finally, with regard to balancing under Rule 403, a chance of prejudice does not end the analysis.  "If Rule 403 could be employed so easily to keep out instances of child molesting, Rule 414 would be effectively gutted.  Categorical exclusions on this kind of inflammatory propensity evidence are 'precisely [what] Congress intended to overrule.'"  *Sanchez*, 440 F. App'x at 440 (citation omitted).

### 2. Analysis

As a threshold matter, the charges against the defendant fall within the meaning of "child molestation" under Rule 414 because they are violations of Chapter 110 of Title 18.  *See* Fed. R. Evid. 414(d); 18 U.S.C. §§ 2251, 2252A.  Therefore, Rule 414, rather than Rule 404(b)(2), governs the admissibility of other acts of "child molestation."  But even when the evidence the United States seeks to admit does not constitute other acts of "child molestation," it is nevertheless admissible as res gestae evidence and/or under traditional Rule 404(b)(2) principles.

The defendant groomed Child1 for sexual abuse and exploitation by, among other things, exposing her to pornography and providing her with sex toys.  This conduct is res gestae of the charged offense.  Even if it were not, it would be admissible under traditional Rule 404(b)(2) principles to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

The defendant sexually abused Child1 during the same general time frame in which he was creating child pornography of her.  This conduct is res gestae of the charged offense.  Even if it is not, it is admissible under Federal Rule of Evidence 414.  And even if Rule 414 did not exist, this conduct would be admissible under traditional Rule 404(b)(2) principles to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

The defendant distributed the images he created to others, and he received similar material in return.  This conduct is res gestae of the charged offense.  Even if it is not, it is admissible under Federal Rule of Evidence 414.  And even if Rule 414 did not exist, this conduct would be admissible under traditional Rule 404(b)(2) principles to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

Specifically, the United States anticipates that the defendant will claim that he had no sexual interest in children (*i.e.*, no motive to produce or save child pornography), no intent to create child pornography, no plan or preparation to sexually exploit Child1, no knowledge any exploitation was occurring or photos were being created, no role in or responsibility for sexually exploiting Child1, but if he were somehow involved, it was a mistake or accident.  Evidence that the defendant repeatedly engaged in child sexual abuse and exploitation during the relevant time period refutes all of these claims.  In addition, Rule 403 balancing does not require exclusion.

The nature of the conduct with which the defendant has been charged involves hands-on sexual exploitation of a child.  The jury will see photographs the defendant created in which a 10-year-old child is sadistically abused.  The uncharged conduct does not risk overshadowing the charged conduct.  To the contrary, it was occurring roughly contemporaneously with the charged conduct and any prejudice from the evidence is fair – especially in light of the defendant's expected position.

### I.  Stipulations

The government has sought a number of stipulations from the defense on a number of undisputed matters.  Stipulation as to these matters is appropriate so that the trial of this case may proceed efficiently.

### V.   Other Matters

#### A.  Age Appropriate Oath

Federal Rule of Evidence 611(a) confers broad discretion on this Court in controlling: "the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment."  Fed. R. Evid. 611(a).

In addition, Federal Rule of Evidence 603 permits witnesses to declare that they will testify truthfully by "oath or affirmation" administered "in a form designed to impress that duty on the witness's conscience."  The Notes of the Advisory Committee state that "[t]he rule is designed to afford the flexibility required in dealing with . . . children.  Affirmation is simply a solemn undertaking to tell the truth; no special verbal formula is required."

Asking a child "do you solemnly swear or affirm" may mean something entirely different to a child than to an adult witness.  The United States requests that rather than administering the

standard oath used for adult witnesses, the Court employ a child-fair oath that the child will understand and agree to follow before testifying. The United States proposes that the Court simply ask the child: "Do you promise that you will tell the truth?"  *See, e.g., United States v. Drift*, 2014 WL 4662505, at *1 (D. Minn. Sept. 19, 2014) (granting United States' motion in limine for a child friendly oath by agreeing to replace the term "swear" with "promise" to tell the truth).

### B.  The Crime Victims' Rights Act

Child1 has indicated that she may wish to watch some of the trial of this matter.  The Crime Victims' Rights Act provides that crime victims have "[t]he right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding."  18 U.S.C. § 3771(a)(3); *see also In re Mikhel*, 453 F.3d 1137 (9th Cir. 2006) ("A mere possibility that a victim-witness may alter his or her testimony as a result of hearing others testify is therefore insufficient to justify excluding him or her from trial. Rather, a district court must find by clear and convincing evidence that it is highly likely, not merely possible, that the victim-witness will alter his or her testimony."); *United States v. Edwards*, 526 F.3d 747 (11th Cir. 2008) ("a criminal defendant has no constitutional right to exclude witnesses from the courtroom").

Federal Rule of Criminal Procedure 60(a)(2) similarly provides for victims' rights and provides that a victim must not be excluded "unless the court determines by clear and convincing evidence that the victim's testimony would be materially altered if the victim heard other testimony at that proceeding."  Fed. R. Crim. P. 60(a)(2).  Federal Rule of Evidence 615 also

contains an explicit exception for "a person authorized by statute to be present."  Fed. R. Evid. 615(d).

If Child1 decides that she wishes to watch some or all of the trial, she has a right to do so and should not be excluded.

### C.  Forfeiture Allegation

The indictment contains a forfeiture allegation.  (R.1: Ind., PageID.4-5.)  Federal Rule of Criminal Procedure 32.2 sets forth the procedure for adjudicating those allegations.  Specifically, it provides:

> As soon as practical after a verdict or finding of guilty . . . on any count in an indictment or information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute. If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense.

Fed. R. Crim. P. 32.2(b)(1)(A).  The rule further provides that "[t]he court's determination may be based on evidence already in the record . . . ."  *Id.* at 32.2(b)(1)(B).

Should the jury return a guilty verdict in this matter, the government proposes to have the Court make this determination based on the evidence that was presented at trial.  The government is not requesting that this matter be determined by the jury.  *See* Fed. R. Crim. P. 32.2(b)(5)(A).

Respectfully submitted,

ANDREW BYERLY BIRGE
Acting United States Attorney

Dated: May 31, 2017

    /s/ Sean M. Lewis
SEAN M. LEWIS
Assistant United States Attorney

27