```
 1                    UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF MICHIGAN
 2                        SOUTHERN DIVISION

 3     _____

 4     UNITED STATES OF AMERICA,

 5                         Plaintiff,
                                         DOCKET NO. 1:17-cr-13
 6     vs.

 7
       MATTHEW JOHN ANDALUZ,
 8
                         Defendant.
 9     _____/

10

11              TRANSCRIPT OF SENTENCING HEARING

12          BEFORE THE HONORABLE ROBERT J. JONKER

13              UNITED STATES DISTRICT JUDGE

14              GRAND RAPIDS, MICHIGAN

15                   September 25, 2017

16

17     Court Reporter:           Glenda Trexler
                                 Official Court Reporter
18                               United States District Court
                                 685 Federal Building
19                               110 Michigan Street, N.W.
                                 Grand Rapids, Michigan 49503
20

21     Proceedings reported by stenotype, transcript produced by

22     computer-aided transcription.

23

24

25
```

```
 1    A P P E A R A N C E S:

 2    FOR THE GOVERNMENT:

 3         MR. SEAN M. LEWIS
           UNITED STATES ATTORNEY
 4         330 Ionia Avenue, N.W.
           P.O. Box 208
 5         Grand Rapids, Michigan 49501-0208
           Phone:  (616) 456-2404
 6         Email:  Sean.lewis2@usdoj.gov

 7    FOR THE DEFENDANT:

 8         MS. HELEN C. NIEUWENHUIS
           FEDERAL PUBLIC DEFENDERS' OFFICE
 9         50 Louis Street, N.W., Suite 300
           Grand Rapids, Michigan 49503-2633
10         Email:  Helen_nieuwenhuis@fd.org
           Phone:  (616) 742-7420

11

12                        *   *   *   *   *

13                              Grand Rapids, Michigan

14                              September 25, 2017

15                              2:08 p.m.

16                  P R O C E E D I N G S

17         THE COURT:  We're here on the case of the
```

18   United States against Matthew John Andaluz, 1:17-cr-13, at the

19   time set for sentencing.

02:09:03 20         Let's start with appearances, please.

21         MR. LEWIS:  Good afternoon, Your Honor, Sean Lewis

22   appearing on behalf of the United States.

23         THE COURT:  All right.

24         MS. NIEUWENHUIS:  And Helen Nieuwenhuis on behalf of

02:09:11 25   Mr. Andaluz, Your Honor, who is here today and seated on my

02:09:15  1   right.

2            THE COURT:  All right.  Thank you.

3                In just a minute you're going to get a test pattern

4        of sound, so I'll just warn you about that in advance.  But in

02:09:23  5   the meantime we'll move forward.

6                So what we have in terms of sentencing materials --

7        and I want to make sure I have all I need -- are the

8        presentence report from our probation officer.  I also have a

9        sentencing memorandum from Ms. Nieuwenhuis on behalf of her

02:10:01  10   client which also supports her request for downward variance.

11       I have a character letter that was also filed by the defense.

12       And then the government sentencing memorandum.  And I think in

13       terms of written material that's all.

14               Anything else I should have from the government in

02:10:20  15   written form?

16               MR. LEWIS:  No, thank you.

17               THE COURT:  All right.  Anything I'm missing from the

18       defense?

19               MS. NIEUWENHUIS:  No, Your Honor.

02:10:24  20               THE COURT:  Okay.  Thank you.

21               Let me start with the Plea Agreement in the case.  It

22       did call for a dismissal of Count 2 in exchange for the guilty

23       plea to the first count.  Ultimately that doesn't have an

24       impact on where the guidelines come out.  They are still going

02:10:51  25   to be in this case life at 43 as the level of offense and

4

02:10:57  1    category I criminal history.  But it does have the impact, as

2    the probation officer points out in paragraph 80, of capping

3    the sentence here at 360 months or 30 years.  If there had been

4    a conviction on both counts, then because life is the guideline

02:11:14  5    sentence, the two counts of conviction would stack, and so the

6    sentence the Court could potentially impose would be higher.

7            And that requires me to take a look, then, at 6B1.2

8    of the guidelines and related authority to make sure I'm

9    satisfied on this record that that's a fair resolution of the

02:11:32  10    case.  I do think it is in this situation.  And I think that

11    the resulting sentencing range available to the Court, along

12    with the guidelines and everything else, provides adequate

13    sentencing discretion for the Court and still does not in any

14    way undermine the purposes of sentencing, so I'm going to go

02:11:56  15    ahead and accept the Plea Agreement and invite the government's

16    motion to dismiss the affected count.

17            MR. LEWIS:  I move to dismiss Count 2, Your Honor.

18            THE COURT:  All right.  I'll go ahead and grant that.

19    And then in terms of the guidelines, I won't go through all the

02:12:11  20    separate levels of enhancement.  The basic message, as detailed

21    in the presentence report, is that when you go through the

22    guideline range, you wind up at about -- I think the total is

23    51.  You take two points off for acceptance and you're at 49,

24    which is still off the chart.  And under those circumstances,

02:12:33  25    the guidelines direct a move to the top level of offense which

02:12:39  1    is 43, and category I is on the chart lifetime, but because of

2    the count of conviction, which has a 30-year maximum, the

3    guideline sentence becomes 360 months for that maximum.

4         Does the government have any objections to the

02:13:00  5    guidelines?

6              MR. LEWIS:  No, thank you.

7              THE COURT:  Okay.  And is the government moving for

8    the third point in this case or not?

9              MR. LEWIS:  We are not, Your Honor.

02:13:05  10              THE COURT:  Okay.

11              MR. LEWIS:  The Plea Agreement -- or the plea came

12    after the final pretrial conference.

13              THE COURT:  All right.  So I'm going to grant the two

14    points of acceptance that are within my power because I think

02:13:15  15    that's appropriate on this record.  And as Mr. Lewis has

16    indicated, the government isn't moving for the third point

17    given the timing.  And I think that it's paragraph 48 of the

18    presentence report should simply reflect that there will only

19    be two points off 51, so we'd be down to 49, not 48.  But as I

02:13:42  20    said, it doesn't have any impact since we go down to 43 in any

21    event.

22         Does the defense have any objections to the

23    guidelines?

24              MS. NIEUWENHUIS:  No, Your Honor.

02:13:50  25              THE COURT:  Okay.  Then let me hear from the parties

02:13:52   1    on their sentencing positions starting with the defense.

2                    *MS. NIEUWENHUIS:*  Thank you, Your Honor.

3                    Your Honor, I've spent considerable time on

4        Mr. Andaluz's case, and there is really -- it's really

02:14:25   5    difficult when representing somebody on these child pornography

6        cases.  The guidelines are just incredibly high as the Court is

7        aware and we've kind of gone through already.  But there are

8        many things I'd like to say on his behalf.

9                    Prior to this incident and what occurred with the

02:14:51  10    codefendant, Ms. Evans, and the minor child involved,

11       Mr. Andaluz had really significant issues.  Mental health

12       issues.  Depression.  He had attempted to commit suicide

13       numerous times and was almost successful back in 2009 when he

14       lived in Queens, New York.

02:15:13  15                    Then he met Ms. Evans online and ended up moving to

16       Battle Creek.  And although it may sound not strange but

17       difficult to understand, that when he came here, I think this

18       did really feel like a family to him.  And I think that I'm

19       asking the Court to factor that issue into the sentencing,

02:15:39  20    because I think when you look at Mr. Andaluz's prior life

21       before meeting Ms. Evans, I really don't think he had much of a

22       family foundation or a family that he felt a part of.  And so

23       I'm asking the Court to take that into consideration when we're

24       looking at this mandatory minimum of 15 and these guidelines at

02:16:07  25    30 years.

02:16:08  1          Mr. Andaluz has never been incarcerated until this

2    case.  And he's criminal history category I.  He's never really

3    done any time.  He's never faced prison.  He's never even been

4    in a local county jail.  And so I'm asking the Court to take

02:16:30  5    those factors into consideration in the consideration of

6    perhaps a downward variance.

7          Many times I've been before this Court and my client

8    has a record which is replete with going to prison and coming

9    back and going to prison again, and that is not the person you

02:16:49 10    see before you.  And I'm not minimizing in any way what

11    actually happened in this case.  And I don't think Mr. Andaluz

12    is in any of my conversations that I've ever had with him.  I

13    think that he has shown real guilt, remorse, and I would almost

14    say extreme remorse over this, Your Honor.  I think it's

02:17:11 15    difficult for Mr. Andaluz to be able to articulate, I guess,

16    for himself on this case.  He has certainly indicated to me

17    that he knows he needs psychological help and certainly wants

18    to take advantage of any and all programs that the Court may

19    sentence him to.  And I think that's important, because whether

02:17:36 20    a person really wants to better themselves and use the time

21    that the Court is going to give, and clearly even at the

22    mandatory minimum he is looking at 15 years of incarceration

23    and treatment, and I think he stands here really ready,

24    willing, able, and accepting that he has those limitations and

02:18:00 25    they need to be addressed.  And he knows that he has had mental

02:18:06  1    illness for a long time.  And I think that he's had a long time

2    to sit at the jail and think about this and take that into

3    consideration.

4            He does have some other physical concerns.  He has --

02:18:20  5    he needs some dental work.  He needs corrective lenses.  He

6    suffers from sleep apnea.  Hopefully some of those things can

7    be addressed while he's away.

8            He's indicated to me he's actually done some research

9    as to placements.  And I know the Court usually does not

02:18:39 10    recommend a particular placement.  I know that's for the Bureau

11    of Prisons.  But he has indicated that although his mom lives

12    in Florida, that he would really like to be placed in

13    North Carolina where the Butler -- or Butner facility is,

14    Your Honor.

02:19:00 15            He's very interested in vocational training.

16    Electrical training.  Culinary training.  And he's quite a

17    talented artist, Your Honor.  And I ask the Court to take all

18    of these things into consideration.

19            During the pendency of this case, as the Court is

02:19:15 20    aware, Ms. Evans committed suicide.  This left this minor child

21    really with no place to go.  And it's -- Mr. Andaluz has

22    discussed this, Your Honor, and I think that he is remorseful

23    and is asking the Court to take all of this into consideration.

24            While he was in jail he had received a letter, and

02:19:45 25    I'm not going to introduce the entire letter from Ms. Evans,

02:19:50  1    but she did indicate that -- she says that "I can't go through

2    life without my family, and yes, that includes you too."  And I

3    think that really kind of says it all because I think that

4    Mr. Andaluz felt the same way about their family.  And although

02:20:05  5    we are sitting here on this case today and he is being

6    sentenced on one of the most serious offenses you can have, I'm

7    asking the Court to take all of that into consideration,

8    Your Honor.

9            THE COURT:  All right.  Thank you, Ms. Nieuwenhuis.

02:20:18  10           MS. NIEUWENHUIS:  You're welcome.

11           THE COURT:  Mr. Andaluz, you have the privilege of

12    speaking too.  You don't have to, but it's an opportunity.

13    It's a right and a privilege, not an obligation.  And if you'd

14    like to use it, I would be happy to listen to you now.

02:20:29  15           THE DEFENDANT:  I have written something.

16           THE COURT:  Please.

17           THE DEFENDANT:  When I first came -- sorry.  When I

18    first came to Michigan after my suicide attempt in 2009, I was

19    a completely broken individual with no anchor in this world.  I

02:20:43  20    had no idea who I was as a person anymore or who I could grow

21    to be.  In some very important ways I know that I have failed

22    the person I wanted to become.  But in the years since 2009

23    I've worked hard at fixing myself through medication, therapy,

24    and especially the family I became a part of.  Everything that

02:21:03  25    is good about me is because of them.  Everything else is, I

02:21:07  1    know, all on me.

2                   Compassion, empathy, loyalty, and even pragmatism are

3        aspects of myself I don't think I would have ever known again

4        if it weren't for the people closest to me here in Michigan.

02:21:17  5                   I harbor no illusions as to the seriousness of the

6        charge I've been convicted of, but I'm seeking from the Court a

7        merciful sentence in my case today.  I'm asking for the minimum

8        sentence to be granted because I'm neither unfocused nor

9        dangerous.  I'm no longer the broken person I was eight years

02:21:35 10    ago.  And I'm no longer the person I have become in its place.

11       I have no criminal history, and I know that inside myself I'm

12       not a danger to any society.  I know that with the therapy

13       offered to me I can assure the courts of the same.

14                   I regret tremendously the events and actions that led

02:21:49 15    me here to this place in my life.  One person I've come to love

16       above all others in this world is the one person that has

17       become hurt the most.  Trying to atone for her pain will occupy

18       the remainder of my days in this life.

19                   I plan on using my time while incarcerated as

02:22:04 20    thoroughly as possible with therapy, education, and work.  My

21       hope is to be fully prepared for a life outside of prison in a

22       time frame early enough for it to be worth the effort because I

23       further hope to not grow old and die in prison.  There's not

24       much more I can say that hasn't already been said here, so I

02:22:24 25    just want to say thank you to the Court for taking time and

02:22:26  1   listening to me.

2          *THE COURT:*  All right.  Thank you, Mr. Andaluz.

3          From the defense at this point anything else?

4          *MS. NIEUWENHUIS:*  No, Your Honor.  Thank you.

02:22:34  5          *THE COURT:*  All right.  You may both be seated and

6   we'll give Mr. Lewis an opportunity.

7          *MR. LEWIS:*  Your Honor, Child 1 is here today and

8   wishes to make an in-person victim impact statement to the

9   Court, so with the Court's permission, may I bring her forward?

02:22:51  10         *THE COURT:*  Sure.

11         *MR. LEWIS:*  Could I have just a moment, Your Honor?

12         *THE COURT:*  Sure.  Why don't you just start your

13  presentation and we can let the victim rest and take some deep

14  breaths, get settled.  She's going out into the hall for a bit.

02:23:29  15  And once you're finished, we'll see if she's in the state of

16  mind that she wants to address the Court.

17         *MR. LEWIS:*  Thank you, Your Honor.

18         *THE COURT:*  Sure.

19         *MR. LEWIS:*  Your Honor, when Mr. Andaluz just

02:23:40  20  addressed the Court he talked about how Ms. Evans and her

21  children had become like a family to him.  And I think that's

22  right.  And that is, frankly, one of the most shocking and

23  troubling aspects of this case.  Instead of taking the

24  opportunity to cherish that opportunity that was presented to

02:24:01  25  him, to have a family, to have people who trusted and loved

02:24:07  1   him, who looked to him for support and stability, he took

2   advantage of that situation.  He took advantage of a 9 and then

3   10-year-old girl who was looking to him as a father figure as

4   part of a family.

02:24:25  5   It wasn't just something that happened once.  It was

6   part of a deliberate process.  The defendant engaged in

7   grooming activity.  He photographed, sexually abused, and

8   exploited the child over a period of time.  He circulated those

9   images to other people around the internet.  And it isn't the

02:24:47 10   case that that was all conduct that occurred a while ago.  That

11   it was just back in 2010.  Because even when agents came with a

12   search warrant in 2016, the defendant still had child

13   pornography.  So I think looking at the record in this case

14   it's not accurate to say, as the defendant has today, that he

02:25:08 15   does not pose a danger.  I think all the evidence in this case

16   shows exactly the opposite.

17   When you look at the conduct in this case, I don't

18   think serious comes anywhere close to describing what happened.

19   Devastating.  Earth-shattering.  What he did will scar that

02:25:29 20   child forever.  Yes, she'll be able to move on.  Yes, she'll be

21   able to have a productive life where she'll be able to make an

22   impact.  But the hurt and the pain from the actions of somebody

23   who was, in his own words, part of the family is just a level

24   of harm that we believe a sentence of 30 years is needed to

02:25:54 25   address.

02:25:56  1          For those reasons, Your Honor, as well as the other

2   3553(a) factors that I addressed in my memo, we would ask the

3   Court to impose the maximum sentence available here.

4          THE COURT:  All right.  Do you want to go check on

02:26:09  5   her?  And if you think we need a short break, we can take one.

6          MR. LEWIS:  Thank you.

7      (Mr. Lewis has an off-the-record conversation with

8   Child 1)

9          MR. LEWIS:  All right.  Your Honor, Child 1 is ready

02:27:35  10   to proceed.

11          THE COURT:  All right.  Thank you.  We're calling you

12   Child 1, I'm sure you know, not because that's your name but

13   because when we're in proceedings like this we use a general

14   designation to protect your privacy as a minor victim.  And I

02:27:49  15   don't mean any disrespect in calling you that, but that's what

16   I'm going to do.

17          And do you feel like you're ready to present your

18   statement?

19          CHILD 1:  Yes, Your Honor.

02:27:59  20          THE COURT:  Okay.  Go ahead and pull that microphone

21   close and we'll listen to what you want the Court to hear at

22   this point.

23          CHILD 1:  So this case has changed my life

24   influencely.  I've had to live in four different houses in

02:28:16  25   11 months.  I've been taken away from my family, my brother,

02:28:20  1    and now my mother is dead.  I have absolutely nobody.  I was

2    put in Albion because I was taken away from everybody and I was

3    pushed away from the world.  I felt like I wanted to end my

4    life.

02:28:38  5              This feeling has made me worried, scared, and has

6    driven my life down to the hole.  One day I might not have a

7    place to live.  One day I may end up in a hole.  I don't know

8    how my education is going to go because every day I have to

9    feel "What am I going to come home to?  What's going to happen

02:28:59  10   with me in the next week, next month?"  An almost 17-year-old

11   shouldn't have to be going through this.  If you ask a

12   17-year-old to step into my shoes for five seconds, that child

13   will not be able to last one second because nobody knows how I

14   feel.  Nobody knows how hard it is to live like this.  I can't

02:29:22  15   have a normal relationship with anybody because I feel like I

16   can't trust anybody anymore.  My life has been screwed up, and

17   I just want it to be normal again.

18             I feel like this man should get 30 years in life --

19   or in prison because he needs to figure out how hard it is for

02:29:46  20   me now to live my life.  How hard it is to be the person that I

21   want to be.  I want to change my life and be somebody else, but

22   then I have to realize I'm not anybody else, I am me.  These

23   11 months have been the worst 11 months of my life.  Everything

24   happened in a blink of an eye.  And I still remember it like

02:30:11  25   the back of my hand and will never forget the day everything

02:30:14  1    happened.

2              I have the fear of not graduating, having to switch

3         schools, going different places, going to stranger people and

4         having to change my life completely, and I don't like it.  I

02:30:33  5    want this all to end.

6              And like I said before, I've wanted to end my life

7         because I can't handle it anymore.  I've wanted to cut myself

8         so bad that I bled to death.  I wanted to hang myself.  I've

9         wanted to do so many things.  I just haven't had the strength

02:31:05 10    to because I know out there there's people who love me for who

11        I am and don't want me to go away.  And I've learned that.  But

12        this has just changed my life.  And I think he should get

13        30 years in prison.  And that's all I have to say.

14             THE COURT:  All right.  Thank you.  Thank you very

02:31:22 15    much.

16             Mr. Lewis, anything else from the government?

17             MR. LEWIS:  No, thank you, Your Honor.

18             THE COURT:  Is there any specific restitution

19        request?

02:31:37 20             MR. LEWIS:  No, Your Honor.

21             THE COURT:  Okay.  Anything else, Ms. Nieuwenhuis?

22             MS. NIEUWENHUIS:  No, Your Honor.  Thank you.

23             THE COURT:  All right.  I want to start by

24        reiterating the guidelines.  That's where we always start when

02:31:49 25    it comes to sentencing.  And as I indicated earlier, and

02:31:52  1    without objection, the guideline on the chart is life, but

2    because the count of conviction has a 30-year maximum, the

3    guidelines make our guideline sentence 360 months.  The

4    mandatory minimum is 15 years.  And the question in this

02:32:09  5    sentencing, as it would be in any, is what's sufficient but not

6    greater than necessary to achieve the purposes of sentencing?

7    Which include punishment in an appropriate way that doesn't

8    overpunish but doesn't underpunish either.  The punishment that

9    reflects the gravity of the crime.  Certainly deterrence for

02:32:26 10    Mr. Andaluz individually but also for other people considering

11    this kind of activity.  Public protection.  The need to promote

12    rehabilitative opportunities.  All those things are in the mix.

13         Before I talk specifically about what I intend to do

14    in this sentence, I want to say, first of all, that I think any

02:32:47 15    time we hear from a victim in open court we are blessed with a

16    gift that we don't get in every criminal case.  We're getting

17    the opportunity to see not only and hear not only what the

18    defendant experiences, and that's important too, that's an

19    allocution we hear in virtually every sentence, but now we also

02:33:11 20    get directly presented in the very same space the story and

21    impact of the victim.  And in this case we were also receiving

22    a very articulate story from a victim who was able to in a few

23    words but a few very direct, crisp words explain how this has

24    affected her life, turned it upside down, turned it, as she

02:33:39 25    says, into nothing a normal 17-year-old should ever have to

02:33:42  1    experience.  And I think everybody can agree on that.

2    Certainly no normal 17-year-old should ever have to experience

3    this, let alone experience it at the early and tender ages of

4    10 and 11 years old.  And it's important for us to see and hear

02:34:00  5    that and I think for us to say through the Court, to any victim

6    and now the victim that we're calling Child 1 here in court,

7    there's no part of this or anything that happened that is in

8    any way your fault.  And I want that to be very clear.  The sad

9    thing is when we do hear and read victims' stories in cases

02:34:20 10    like this, one of the last and most painfully crooked legacies

11    is that the victims sometimes take on guilt and responsibility

12    and nothing could be further from the truth.  I think I need to

13    say that flat out.

14              The second thing I just want to say in response to

02:34:36 15    the victim is that probably like many victims she has

16    experienced the desire to end her life in any number of ways to

17    make the pain stop.  And as she said, she didn't have the

18    strength to do it.  And I would say to her I think it takes

19    more strength to keep going and I admire that.  She's taken

02:34:59 20    steps already, and I can hear this in her statement, not to

21    bury and ignore what happened but to embrace it and say "It

22    happened, it wasn't my fault, but now I've got to move on and

23    step forward, recognizing who I am, what happened to me, and to

24    do that in a fearless way."  And if she continues to do that,

02:35:22 25    if today is any indication, I have no doubt she'll not only

02:35:25   1   graduate, but she'll go on and do, I think, very positive,

2   contributing, and successful things throughout her life,

3   despite the very real impact, very painful impact, and really

4   the life-changing impact that she described from the criminal

02:35:43   5   activity.

6          Part of the sentencing obligation of every court is

7   to hear and balance those stories of the defense and the

8   victim, put it on the guidelines, consider all of the factors

9   in the case, and decide what the Court believes is the

02:35:58 10   sufficient but not greater than necessary sentence to comply

11   with the purposes of the statute.

12          In this case I do believe the guideline sentence is

13   the appropriate one that balances the factors and does it in a

14   meaningful and appropriate way, and so I do intend a guideline

02:36:15 15   sentence, which in this case is 360 months.  I think it's

16   important to say a few things about that because it's not as

17   though what Ms. Nieuwenhuis has said simply falls on deaf ears

18   or washes away.

19          There are many genuine problems that Mr. Andaluz has

02:36:34 20   had in his life, and I don't diminish that in any way.  There

21   was perhaps a glimmer of hope for the first time when this

22   group of people came together and hoped to forge a family.  All

23   of that went terribly wrong, but that doesn't mean that the

24   desire for one was any less real, and I understand that and I

02:36:56 25   hear that.  I think it's important to say, though, that even

02:36:59   1    though I intend the guideline sentence of 360 months and even

2    though it is the maximum sentence on the count of conviction,

3    it's not the maximum sentence that Mr. Andaluz could have faced

4    had the case gone to trial and had he lost along the way.  The

02:37:16   5    Plea Agreement did give him real and substantial benefit, and I

6    need to indicate that in my view at least that the kinds of

7    factors and considerations that Ms. Nieuwenhuis properly

8    identifies in support of her client have already been weighed

9    and in my view credited in the plea deal.  By giving the

02:37:33  10    defense the certainty that the final sentence would be between

11    the minimum 15 and the maximum 30 years on the single count of

12    conviction, what Mr. Andaluz was able to do is ensure that he

13    didn't face worse.  Knowing the guideline sentence would

14    probably be life on the chart, he doesn't have to face the risk

02:37:53  15    that multiple counts of conviction would be stacked opening the

16    possibility of a sentence even longer than 360 months.  As the

17    Court has seen in other cases like this that have gone to trial

18    and resulted in multiple-count convictions.

19             I think it was appropriate to do that in this case,

02:38:12  20    to limit the exposure, because the plea deal ultimately did

21    allow the case to go forward without the need for testimony,

22    which would have certainly included testimony from the victim,

23    Child 1, and all of the added trauma that goes with that.  It

24    was a recognition as well that what Mr. Andaluz did, albeit

02:38:37  25    after the final pretrial conference, was come to terms with

02:38:41  1    accepting responsibility for this.

2              And, of course, 360 months is still a lot of time.

3    It's a long time and I'm mindful of that as well.  In this

4    case, though, departures and variances I don't think are

02:38:55  5    warranted because the reason we're at 360 months is not simply

6    because the guidelines related to child pornography or child

7    exploitation tend to generate high numbers in many or all cases

8    but because the underlying factors here really are based on

9    real serious wrongdoing.  What we have is not just the

02:39:21 10    exploitation of the prepubescent female, bad enough in any

11    case, but we have a victim who was abused at the hands of a

12    person who was supposed to be caring for her.  If not the

13    biological father, then at least the person who wanted to be

14    the father figure, who wanted to be the caretaker.  And that

02:39:42 15    just amplifies the harm and the perversion of what happened.

16              Beyond that you have, in my view, the added loss that

17    goes into the mix here when the codefendant and the mother of

18    the child commits suicide as the case is pending, no doubt

19    at least partly because of everything that's circulating in the

02:40:04 20    mix here.  And we have, from what Child 1 has reported here

21    directly, real-life ongoing impact that will probably affect

22    her no matter what she's able to achieve despite it every day

23    of her life.  That kind of activity is serious.

24              And moreover what we actually had here is, you know,

02:40:25 25    not just a person who was collecting child pornography, which

02:40:30   1   we see on all too frequent a basis, we had somebody here who

2   created it with this person he was responsible for caring for

3   and then disseminated it to the internet so that what has

4   become common in cases like this is to hear of a so-called

02:40:45   5   series of child pornography tied to the name of a victim.   And

6   we now have a new series out there with this person, Child 1,

7   as the victim which has already shown up in multiple federal

8   law enforcements.   And that we know from experience, sadly, it

9   will be perpetuated and propagated on the internet.   That's

02:41:04  10   about as bad as it gets in my view in cases like this.

11   Actually creating new, fresh material that people take

12   advantage of, propagate.   So although I have in many cases

13   found bases to depart or vary, rarely have I done that in a

14   case where there's been hands-on exploitation.   And I would say

02:41:29  15   here even less so would be the reason since you not only have

16   the hands-on exploitation but contributing to an already

17   polluted stream of internet child pornography we have a new

18   series.   So for those reasons I do think the guideline sentence

19   of 360 months is appropriate, is sufficient but not greater

02:41:52  20   than necessary to achieve the purposes of sentencing, and

21   that's what I intend from the Court's custodial sentence.

22        I certainly am going to recommend mental health

23   assessment and treatment.   There have been multiple efforts

24   that Mr. Andaluz has made over the years at suicide, and the

02:42:13  25   report from the officer indicates that he continues to have

02:42:16   1    those feelings.  He needs to be treated for that, and he

           2    deserves our -- all of our efforts to attempt to meet those

           3    needs.  Certainly medical and dental, all the kinds of personal

           4    care requirements that Ms. Nieuwenhuis identifies will be the

02:42:33   5    responsibility of the federal government given that he is in

           6    custody, and I'll highlight that recommendation.  And I'll

           7    recommend appropriate vocational opportunities since

           8    Mr. Andaluz will benefit from that and will need that when he

           9    does return to the community.

02:42:51 10    I will also note his request for the Butner

         11    placement, which may be a place that will be high on the list

         12    anyway given the sexual offender treatment programming that

         13    sometimes happens there, but in my view that's the priority,

         14    the ability to get sexual offender treatment and appropriate

02:43:11 15    treatment for his mental health-related conditions.

         16    I intend a supervised release period of 10 years

         17    which I think will be appropriate to supervise Mr. Andaluz in

         18    the community to determine whether in fact he is no longer a

         19    threat to the community as he believes or whether there is

02:43:32 20    continuing reason to have supervision as the government

         21    believes.  I think 10 years is an appropriate way to protect

         22    the public and to test those things.

         23    The normal mandatory conditions of cooperation in the

         24    collection of DNA and drug testing are in effect, and the

02:43:51 25    requirement to register on the sex offender registry in a case

02:43:57  1   like this will also be in effect.  Standard conditions

2   including no firearms will also be in effect.

3          I have a series of special conditions that are more

4   tethered to this particular case, and I need to read those out.

02:44:08  5   The first, I'm certainly going to recommend substance abuse

6   assessment and treatment with Mr. Andaluz paying a portion of

7   the costs as he's determined able.  Substances may not have

8   been prevalent in the more recent years for Mr. Andaluz, but

9   there's a history of it and we should address it.

02:44:27  10          Second, Mr. Andaluz must participate in a program of

11   mental health treatment including sex offender programming as

12   directed by the probation officer, again paying a portion of

13   the costs as he's determined able.

14          And (3) he needs to provide the probation officer

02:44:38  15   with access to requested financial information so that that

16   kind of ability-to-pay determination can be made.

17          (4) his residence and employment must be preapproved

18   by the probation officer.

19          (5) he must not associate or have contact with

02:44:53  20   convicted sex offenders other than in a therapeutic setting and

21   with the permission of the probation officer.

22          (6) he must not have contact with minors, that is

23   children under the age of 18, without the written approval of

24   the probation officer, and he must refrain from entering into

02:45:10  25   areas where children frequently congregate such as daycare

02:45:13  1    centers, playgrounds, parks, theaters, and the like.

2             Next, he must not have contact with the victim in

3    this case.  That includes physical, visual, written,

4    electronic, telephone, any contact.  And must not direct or

02:45:27  5    cause or encourage anyone else to have contact with the victim.

6             And then I have a series of four conditions that are

7    tied to use and monitoring of internet, internet-capable

8    devices.  They are different than the ones the probation

9    officer has recommended, so I'll read them out.  I think I'm up

02:45:46 10    to 8.  Mr. Andaluz must submit all photographic equipment,

11    personal computers, and other internet-capable devices and

12    related equipment that he owns or controls or uses to search to

13    be conducted by the U.S. probation officer or its designee

14    without prior notice or search warrant.  And he must permit the

02:46:03 15    probation office to install and use monitoring programs on all

16    such equipment.  Refusal to submit to that is a violation of

17    the conditions of supervision.

18             (9) he must provide all computer-related billing

19    records including telephone, cable, internet, satellite, and

02:46:18 20    the like as requested by the probation officer.

21             (10) he must report all electronic addresses from

22    which he sends or receives any electronic communications to the

23    probation officer.  And those addresses and related accounts

24    will be subject to search and monitoring by the probation

02:46:33 25    officer.

02:46:36   1          The last one is the defendant must advise anyone in

2     the household or his place of employment that any computer in

3     the household may be subject to computer monitoring.

4          In terms of financial sanctions, there is a special

02:46:52   5     assessment that's automatic of $100.  The forfeiture was

6     preliminarily entered on the camera, and I'll make that final.

7          There is no claim for restitution in a specific

8     amount.

9          And the fine the Court intends at a below-guideline

02:47:15  10     range but still significant and tied to financial

11     accountability in the Bureau of Prisons.  I intend a fine of

12     $5,000 payable on the normal custodial terms of $25 under the

13     IFRP program in minimum quarterly terms or a minimum $20

14     monthly otherwise.  Any balance due in supervision in minimum

02:47:40  15     monthly installments of $50.

16          The last question I have before turning to the

17     lawyers for objections:  Is this a case that involves the

18     special assessment that we see under some of the child

19     pornography cases?

02:47:53  20          MR. LEWIS:  It is not, Your Honor, because the

21     conduct predated that statute.

22          THE COURT:  All right.  Then that's the intended

23     sentence of the Court.

24          For the government, legal objections?

02:47:59  25          MR. LEWIS:  No, thank you.

02:48:00    1          THE COURT:  Ms. Nieuwenhuis, legal objections?

            2          MS. NIEUWENHUIS:  No, Your Honor.  I only had one

            3   follow-up question.

            4          THE COURT:  Sure.

02:48:07    5          MS. NIEUWENHUIS:  You were saying -- and, of course,

            6   this is way in the future -- but like search of computers or

            7   whatever, that's without any probable cause or anything is what

            8   that order is saying?

            9          THE COURT:  It is.

02:48:19   10          MS. NIEUWENHUIS:  Okay.  I guess we would object.  I

           11   would just like to do some research on that, Your Honor.

           12          THE COURT:  Okay.  All right.  Well, I'm going to go

           13   ahead and impose the sentence as I announced my intent to do

           14   it, including the terms in my view no probable cause is

02:48:41   15   required for that kind of search or monitoring because of the

           16   offense of conviction and related conduct that's detailed in

           17   the presentence report.  All of us, whether you've ever been

           18   convicted of a crime or not, are subject to probable-cause

           19   searches under appropriate circumstances.  I think somebody who

02:48:57   20   has been convicted of this offense, was found with child

           21   pornography on the computer at the time of his arrest, I think

           22   over a hundred images and multiple videos, should be subject to

           23   monitoring without notice or a search warrant or other

           24   probable-cause requirement as a matter of public safety.  So

02:49:17   25   that would be my rationale for overruling the defense

02:49:20   1   objection.

           2          And beyond that, then, I need to impose the sentence

           3   as I announced my intent to do, which is a custodial term of

           4   360 months, 10 years of supervision on the terms indicated, the

02:49:35   5   fine of $5,000, the forfeiture going final on the Nikon camera,

           6   and the special assessment of $100 without any restitution

           7   award in the absence of a claim.

           8          And, Mr. Andaluz, I'm going to make that the sentence

           9   of the Court and impose it now.  I'll make it the written

02:49:54  10   judgment of the Court.  You'll have a 14-day window to appeal.

          11   So talk to Ms. Nieuwenhuis about that and make sure you tell

          12   her if you want to appeal because she needs to hear that from

          13   you and then has only that 14-day period to file.

          14          Do you have any questions about that, Mr. Andaluz?

02:50:13  15          THE DEFENDANT:  No, I do not.

          16          THE COURT:  All right.  Anything else, Mr. Lewis?

          17          MR. LEWIS:  No, thank you, Your Honor.

          18          THE COURT:  Or Ms. Nieuwenhuis?

          19          MS. NIEUWENHUIS:  No, thank you.

02:50:19  20          THE COURT:  All right.  Thank you.

          21          THE CLERK:  Court is in recess.

          22      (Proceeding concluded at 2:50 p.m.)

          23                    *   *   *   *   *

          24          I certify that the foregoing is a correct transcript

          25   from the record of proceedings in the above-entitled matter.

1              I further certify that the transcript fees and format

2    comply with those prescribed by the court and the Judicial

3    Conference of the United States.

4

5    Date:  October 31, 2017

6

7                                    **/s/ Glenda Trexler**

8                                    _____
                                     Glenda Trexler, CSR-1436, RPR, CRR

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25